UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
PRINCIPAL LIFE INSURANCE CO.,

                              Plaintiff(s),                  **ORDER**
                                                               CV 09-2359 (LDW) (WDW)
      -against-

SUSAN McMILLAN, et al.,

                              Defendant(s).
----------------------------------------------------------X
**WALL, Magistrate Judge:**

      Before the court is a motion by defendant Nancy Jia for an order disqualifying defendant Susan McMillan from serving as guardian of infant defendant Cody McMillan for purposes of this litigation. *See* Docket Entry ("DE") [34]. Jia also seeks an order disqualifying attorney Dierdre James from representing any party in this action. For the reasons set forth herein, Jia's motion is denied in its entirety.

## BACKGROUND

      This interpleader action was commenced by Principal Life Insurance Company ("Principal Life") regarding the disposition of a life insurance policy. Interpleader relief was granted to Principal Life and a Consent Judgment was entered on December 4, 2009. DE [25].

      According to the complaint, Principal Life issued a life insurance policy (the "Policy") to Sonitrol Securities Services, Inc. ("Sonitrol") that insured the life of Marty McMillan (the "decedent"), an employee of Sonitrol who died in November 2008. Compl. ¶¶ 1, 16, DE [1]. The Policy was issued in August 2001 and provided a $774,000.00 death benefit. *Id.* ¶13. The decedent designated his wife at that time, Susan McMillan, as the primary beneficiary. *Id.* ¶ 14. Marty and Susan McMillan had a son, Cody McMillan, who is an infant defendant in this matter.

The decedent and Susan McMillan divorced sometime during 2003. *See* Dinnocenzo Aff. ¶7, DE [34-1]. In November 2006, the decedent married defendant Nancy Jia a/k/a Xi Mei Jia ("Jia"), *see* DE [34-3], and the two were apparently still married at the time of Marty's death in 2008. Dinnocenzo Aff. ¶7.

Defendant Sonitrol also maintained an employee deferred compensation plan that constituted an employee benefit plan under ERISA, and Marty McMillan was an employee-participant in that plan. Compl. ¶¶ 1,3. Sonitrol provided Principal Life with a copy of a Voluntary Deferred Compensation Agreement (the "Deferred Compensation Agreement") executed September 19, 2005. *Id.* ¶25. In connection with this Deferred Compensation Agreement, the decedent purportedly executed a beneficiary designation form naming Cody McMillan as first beneficiary, and Jia, who was at that time, decedent's fiancee, as second beneficiary. *Id.* ¶26.

According to Principal Life, Susan McMillan, Cody McMillan, Sonitrol, and Jia have each claimed entitlement to payment of the death benefit to the exclusion of all other claimants. Susan McMillan claims entitlement based upon her designation as primary beneficiary of the Policy. Compl. ¶¶21-22. Principal Life states that the beneficiary designation form for the Deferred Compensation Agreement "is the basis for Jia and Cody's claim for death benefits under the Policy." *Id.* ¶27. Sonitrol also claimed payment. *Id.* ¶24.

Jia argues that Susan's interests in this litigation are in direct conflict with Cody's, and seeks a ruling that Susan not be allowed to act as Cody's guardian in relation to this matter. Although she does not specifically state as much, Jia apparently is asking the court to appoint a guardian ad litem for Cody for this case. Additionally, Jia moves to disqualify Cody's current

2

attorney, Dierdre James, who was retained at the outset of this litigation by Susan McMillan acting as Cody's guardian. Jia argues that since Susan and Cody's interests conflict and Susan, allegedly, is privy to, or has influenced, James's legal strategies, James must be disqualified.[1]

## DISCUSSION

Rule 17(c) of the Federal Rules of Civil Procedure allows the court to appoint a guardian ad litem, or issue another appropriate order, to protect a minor. *See* Fed. R. Civ. P. 17 (c)(2). "The appointment of such a guardian *ad litem* is not mandatory; rather, a court may in its discretion decide that the circumstances surrounding given litigation indicate that some other form of protection of an incompetent's interests would be more appropriate or that appointment of a guardian is simply unnecessary." *Ruppert v. Secretary of U.S. Dept. of Health and Human Serv.*, 671 F. Supp. 151, 172 (E.D.N.Y.,1987), *rev'd on other grounds*, 871 F.2d 1172 (2d Cir. 1989). Generally, the court "should attempt to decrease costs by refraining from appointing guardians unless there is a substantial likelihood that a conflict of interest may exist and an infant may need protection." *Peterfreund v. Ogunleye,* 1999 WL 65997, at *4 (E.D.N.Y. Feb. 10, 1999) (quoting *Geddes v. Cessna Aircraft Co.,* 881 F. Supp. 94, 100 (E.D.N.Y. 1995)(citations omitted)).

As to motions to disqualify counsel, the resolution of such motions is "a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell,* 922

---

[1] As a threshold matter, Jia clearly has standing to raise the conflict of interest issue as "all attorneys, regardless of their position in the litigation, have an obligation to call to the Court's attention possible disciplinary rule violations." *Burg v. Brunswick Hosp. Center Inc.*, 1987 WL 19431, at *3 (E.D.N.Y., Oct. 23, 1987)(citations omitted). The court takes no position on defendant Susan McMillan's argument that Jia does not have standing in this *lawsuit. See* James Aff. ¶5.

3

F.2d 60, 72 (2d Cir. 1990). The Second Circuit has indicated that courts should exercise caution when considering motions to disqualify counsel as such motions "'are often interposed for tactical reasons,' and . . . 'even when made in the best of faith . . . inevitably cause delay.'" *Evans v. Artek Sys. Corp.,* 715 F.2d 788, 791-2 (2d Cir. 1983) (*quoting Board of Educ. v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir. 1979)); *see also Koch Indus., Inc. v. Hoechst Aktiengesellschaft,* 650 F. Supp. 2d 282, 286 (S.D.N.Y. 2009) (noting that disqualification motions are "generally disfavored in this Circuit because of their tendency to be made for tactical reasons"). As such, the moving party "bear[s] a heavy burden of proving facts required for disqualification." *Evans,* 715 F.2d at 791-92; *see also Skidmore v. Warburg Dillon Read, LLC,* 2001 WL 504876, at *2 (S.D.N.Y. May 11, 2001) (movant must meet "high standard of proof"). With the standards for appointment of a guardian ad litem and for a motion to disqualify counsel in mind, the court turns to the arguments presented in this case.

**Motion to Appoint a Guardian ad litem**

Jia's arguments center upon her contention that for Susan to prevail in her claim to the insurance proceeds, Cody's claim must necessarily fail, and thus the interests of Susan and Cody conflict. Counsel for Susan and Cody note, however, that mother and son are pursuing separate theories of recovery–Susan as beneficiary of the Policy and Cody as beneficiary of the Deferred Compensation Agreement – and thus there is no conflict.

Far from showing a substantial likelihood of a conflict, the court finds that on the evidence before it, any potential conflict is speculative. Jia poses "various scenarios" that "could arise that might compromise his interests" such as a litigation strategy dictated by Susan that would "impair his ability to prevail," or a settlement by Susan. Mem. at 4. Ms. James, as an

4

officer of the court, has a duty to advise the court should an actual conflict arise. *See generally Hollenbeck v. Boivert*, 330 F. Supp. 2d 324, 336 (S.D.N.Y. 2004). The court further notes that although it has not considered Cody's affidavit submitted in opposition to this motion as a waiver of any conflict since he is not legally competent to effect a waiver, *see generally Mercedes v. Blue,* 2001 WL 527477, at *6 (S.D.N.Y. May 17, 2001), Cody will turn 18 at the end of July. Should any of the potential situations raised by Jia actually occur prior to Cody reaching the age of majority, the court may revisit the issue of appointment of a guardian ad litem. The parties are warned, however, that the court will not hesitate to sanction any party that makes such a motion that is not amply supported by the record.

In any event, the court finds that the retention of separate counsel provides adequate protection to the infant defendant's interests. The cases cited by Jia in support of her proposition that the "conflict" between Susan's interests and Cody's necessitates appointment of a guardian ad litem for Cody in this litigation all concern situations where the parent and child were represented by the same attorney. *See, e.g., Richards v. City of New York,* 2000 WL 130635, at *6 (S.D.N.Y. Feb. 2, 2000); *Ganiev v. Nazi,* 189 Misc.2d 83, 84, 730 N.Y.S.2d 661, 662 (App. Div. 2001). Here, Susan immediately retained separate counsel for Cody. Any potential conflict is addressed by retention of separate counsel for Cody.

**Motion to Disqualify Dierdre James**

Jia further challenges Ms. James's representation of Cody. She argues that Ms. James's continued representation of Cody would violate Rule 1.7 of the New York Rules of Professional Conduct that states: "a lawyer shall not represent a client if a reasonable lawyer would conclude that either: (1) the representation will involve the lawyer in representing differing interests; or (2)

5

there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests. N.Y. Rules of Prof. Conduct 1.7(a), 22 N.Y.C. R.R. § 1200. Courts are reluctant to disqualify attorneys on this basis and consider the resolution of questions of conflict of interest to be "primarily the responsibility of the lawyer undertaking the representation." *Mercedes,* 2001 WL 527477, at *3 (quoting Model Rules of Prof'l Conduct Rule 1.7 Comment (1987)).

Jia's counsel points to several legal "arguments" that he claims Susan and Ms. James are "discarding . . . so that Susan can receive the entire policy." Dinnocenzo Reply Aff. ¶5. Put in plain terms, Jia's implicit argument is that Susan's retention of Ms. James on Cody's behalf was a sham so that Susan could ultimately receive the entire proceeds of the policy. The only specific argument raised by Jia is the fact that Cody has asserted cross claims against Jia and Sonitrol, the only other parties implicated in his theory of recovery under the Deferred Compensation Agreement, but has not asserted a cross claim against Susan. Jia seems to believe that the decision not to assert such a claim is essentially proof positive that attorney James is acting in Susan's best interests, not Cody's. Despite Jia's belief, the mere fact that Susan and Cody have not asserted cross-claims against one another is non-dispositive. Zealous representation of a client does not mean asserting claims or taking positions not supported by the evidence or applicable law. Susan's counsel, in discussing Susan's decision to not assert a cross claim against Cody, states his belief that such a claim "would have come dangerously close to the ambit of Rule 11." Green Aff. ¶11. While the court takes no position on whether a cross claim would be sanctionable here, the very fact that Rule 11 exists underlines the fact that not every conceivable argument must be made in a given litigation. The court finds no evidence that James

has been influenced in her strategies by consideration of Susan's interests.

Cody's attorney Ms. James has submitted an affidavit in which she states that she has not deferred to Susan's claims, that Susan "has provided no direction to the undersigned in developing the strategy" for Cody's representation, and that her legal strategy would be the same even if there was a different guardian. James Aff. ¶11. The court sees no evidence to dispute counsel's affidavit. Apart from Jia's conjecture about how Cody's counsel should be conducting the case, she has provided no contradictory evidence that Susan has in any way influenced the manner in which Ms. James has represented Cody.

In sum, the court finds that any potential conflict here was alleviated by retention of separate counsel for Cody. Despite Jia's allegations, there is no evidence that Cody's attorney is acting to forward Susan's claims over Cody's. The court finds that Cody's interests are being adequately protected, and that the added expense of the appointment of a guardian ad litem is unnecessary. Thus, Jia's motion is denied in its entirety.

Dated: Central Islip, New York
      May 21, 2010

**SO ORDERED:**

 /s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge